**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

William John Grady, III,                         Civil No. 10-768 PJS/JJK

       Petitioner,

                                **REPORT AND**
   v.                                            **RECOMMENDATION**

Otis Zanders,

       Respondent.

William John Grady, III, Minnesota Correctional Facility Red Wing, 1079 Hwy. 292, Red Wing, MN 55066, *pro se*.

Arden J. Fritz, Esq, Assistant Sherburne County Attorney, 13880 Business Center Drive, Elk River, MN 55330, counsel for Respondent.

JEFFREY J. KEYES, United States Magistrate Judge

## INTRODUCTION

This matter is before the Court on the Petitioner's Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc. No. 1.)  Respondent has moved to dismiss the Petition.   (Doc. No. 10.)  The matter has been referred to this Court for a Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons discussed below, this Court recommends that the Petition be denied, and this action be dismissed with prejudice.

## I.   BACKGROUND

Petitioner is serving a 96-month sentence in Minnesota State Prison following his conviction for criminal vehicular homicide in October 2005.  The

facts of the case are detailed in two Minnesota Court of Appeals unpublished opinions affirming Petitioner's sentence.  *State v. Grady*, No. 06-228, 2007 WL 898597 (Minn. Ct. App. Mar. 27, 2007) (*Grady I*); and *State v. Grady*, No. 09-631, 2009 WL 4573944 (Minn. Ct. App. Feb. 16, 2009) (*Grady II*).

Just after midnight on March 12, 2005, Petitioner drove his Ford Expedition SUV onto Highway 169, a four lane divided highway.  He turned into the northbound lane but proceeded southbound against oncoming traffic.  Motorists on the highway attempted to alert Petitioner to his error by flashing their headlights and waving their arms, and other motorists called 911 to report that Petitioner's white truck was travelling in the wrong direction.  At approximately 12:21 a.m., the Sherburne County Sheriff's dispatch office received a report of a crash on Highway 169.  Petitioner had driven his truck head-on into a northbound Honda Accord driven by Christine Heath.  Ms. Heath was partially ejected from her vehicle, pinned underneath it, and burned to death when the Accord burst into flames.

Before the accident, Petitioner had engaged in a night of heavy drinking at a friend's house.  A blood sample drawn from Petitioner within two hours of the crash revealed an alcohol concentration of .26 grams per 100 ml of blood.  Petitioner had five driving-while-impaired (DWI) convictions between 1978 and 1992.  On the date of the crash, Petitioner's driver's license was valid but with the restriction that any use of alcohol or drugs invalidated his license.

Petitioner was charged with three counts of criminal vehicular homicide resulting in death, one count of violation of a restricted driver's license, and one count of third-degree driving while impaired.  The county later dismissed one of the criminal vehicular homicide charges and the driving-while-impaired charge.

While the charges were pending, the state moved for an upward sentencing departure pursuant to *Blakely v. Washington*, 542 U.S. 296 (2004), which had recently been decided.  Petitioner challenged the district court's authority to empanel a sentencing jury after a guilty plea.  The parties eventually agreed that Petitioner would waive his rights to a jury trial for both the guilt and the sentencing phases of the trial and submit the case to the trial judge on stipulated facts and pursuant to the procedures in *State v. Lothenbach*, 296 N.W.2d 854 (Minn. 1980).  Petitioner would preserve for appeal his argument that the district court could not empanel a sentencing jury after a guilty plea.

Represented by counsel, Petitioner appeared in Sherburne County District Court on October 13, 2005.  Petitioner waived his right to a jury trial and agreed to present the issue of guilt or innocence on the remaining two counts of criminal vehicular homicide and the single count of violating his driver's license restrictions to the trial court.  Petitioner also waived his right to a jury trial on the presence of aggravating factors for an upward durational departure from the presumptive sentence under Minnesota sentencing guidelines.

The trial court and Petitioner's own counsel conducted a lengthy, detailed,

3

and comprehensive review and waiver of all of Petitioner's rights with respect to the right to a jury trial on innocence or guilt and his waiver of a separate jury trial to determine the presence of aggravating sentencing factors.  (Doc. No. 4-3, Hr'g Tr. dated October 13, 2005.)  As to the State's motion for an aggravated sentence, Petitioner specifically acknowledged and agreed that by waiving his right to a jury trial he would be giving up the following rights:  a jury determination of whether or not there were adequate facts proved, beyond a reasonable doubt, to demonstrate aggravating circumstances; the right to have the state's witnesses testify in Petitioner's presence; the right to cross-examine witnesses; the right to compel the testimony of favorable witnesses; and the right to testify. (*Id.* at 10-12.)  Petitioner stated, under oath, that he was making the decision to proceed without a jury in this matter freely, voluntarily, without any threats or coercion, and that this decision served his best interests under the circumstances.  (*Id.* at 16, 17.)  The trial court made express findings that Petitioner freely and voluntarily entered into a stipulated facts trial pursuant to Minn. R. Crim. P. 26.01 Subd. 3 on the aggravating factors portion of the case. (*Id.* at 17-18.)

The trial court found Petitioner guilty on each of the three charged counts but imposed a sentence only for one criminal-vehicular-homicide conviction.  On that conviction the court determined that aggravating factors warranted a double departure, rejected defense arguments on mitigating factors, and sentenced

Petitioner to 96 months in prison.

The trial court cited the following aggravating factors in support of the

upward durational departure:

> • Petitioner had been convicted of driving under the
> influence on five separate occasions, which provided
> him five prior opportunities for him to understand the
> illegality of his conduct, that resources were available to
> reform that conduct, and that there would be
> punishment imposed if he continued those behaviors;
>
> • Petitioner's driving conduct, driving 3.8 miles the
> wrong way on a divided highway when other motorists
> traveling the correct direction were making efforts to
> attract his attention, was "more significantly dangerous"
> than the typical conduct involved in criminal vehicular
> operation cases; and
>
> • Petitioner's alcohol concentration of .26 also presented
> "an incredible danger" to the traveling public and also
> demonstrated his conduct was more significantly
> dangerous than the typical conduct involved in criminal
> vehicular operation cases.

(Doc. No. 4-4, Hr'g Tr. dated October 31, 2005, at 47-48 of 54.)  Petitioner was

sentenced on October 31, 2005.  (*Id.*)

Petitioner appealed his sentence to the Minnesota Court of Appeals,

arguing that the trial court relied on invalid aggravating factors to support the

double upward departure, and that the trial court improperly rejected his

arguments regarding mitigating factors on sentencing, and imposed a sentence

that was disproportionate to the severity of the offense.  In a separate *pro se*

brief, Petitioner argued that the sentencing procedures used by the trial court

violated his constitutional rights as determined by the U.S. Supreme Court in
*Blakely*.  But the Minnesota Court of Appeals affirmed the conviction.  Petitioner
filed a Petition for Review with the Minnesota Supreme Court, which was denied
on June 19, 2007.

In January 2008 Petitioner moved the trial court to correct his sentence
pursuant to Minn. R. Crim. P. 27.03, Subd. 9, alleging that: (1) his waiver of rights
to a sentencing jury was invalid; (2) the court erred by relying on stipulated facts
to determine aggravating factors; (3) he was adjudicated on multiple counts from
the same behavioral incidents; (4) the aggravating factors relied upon by the
court were invalid; and (5) he received ineffective assistance from both trial and
appellate counsel.  *Grady II*, 2009 WL 4573944, at *1.  Treating the motion as a
petition for post-conviction relief, the trial court vacated the conviction for one
count of vehicular operation and vacated the conviction for violating a restricted
driver's license, but denied all other motions, thus letting the one criminal
vehicular homicide conviction—and the 96- month sentence—stand.  *Id.* at *2.

Petitioner then appealed the denial of these post-conviction motions to the
Minnesota Court of Appeals, arguing that: (1) he did not validly waive his right to
a sentencing jury; (2) the sentencing procedures violated *Blakely* because the
trial court used stipulated facts to make findings of fact and to find aggravating
factors, and (3) he received ineffective assistance of counsel at trial and during
his direct appeal.  The court of appeals held that the first two of these claims

6

were procedurally barred by *State v. Knaffla*, 243 N.W.2d 737 (1976).  The court concluded that Petitioner's claim of ineffective assistance of counsel was not barred by *Knaffla*, but its review of the merits of the claim showed that Petitioner failed to establish that either his trial or appellate counsel's performances "fell below an objective standard of reasonableness" or that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Grady II*, 2009 WL 4573944 at * 4.  Thus the court of appeals held that the district court did not err by denying the motion to correct sentence.  Petitioner again filed a Petition for Review, but the Minnesota Supreme Court denied the petition.

## II.   **STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), prescribes the standards that govern this Court's substantive review of Petitioner's habeas corpus claims. The relevant portion of AEDPA, 28 U.S.C. § 2254(d), provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.*  In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court discussed the

application of this statute in federal habeas cases.   The Court recognized that:

> a state-court decision can be 'contrary to' this Court's clearly established precedent in two ways.  First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law.  Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours . . . Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 405, 413. The Court also explained that:

> A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was *objectively unreasonable* . . . . [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.

*Id.* at 409, 411 (emphasis added).  As the Eighth Circuit has stated, "[a] state court decision may be incorrect, yet still not unreasonable, and we will grant relief only if the state court decision is both incorrect *and* unreasonable." *Cole v. Roper*, 623 F.3d 1183, 1187 (8th Cir. 2010).

A writ of habeas corpus may also be available where the state courts' resolution of a prisoner's criminal case is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  In other words, habeas relief can be granted if the conviction is based on findings of fact that could not reasonably be

derived from the state court evidentiary record.  When reviewing a state court decision, however, "a federal court . . . presumes that the state court's factual determinations are correct," and that presumption "may be rebutted only by clear and convincing evidence."  *Lee v. Gammon*, 222 F.3d 441, 442 (8th Cir. 2000); *see also* 28 U.S.C. § 2254(e)(1).

A federal district court is not allowed to conduct its own *de novo* review of a state prisoner's constitutional claims.  Habeas relief cannot be granted unless the prisoner has identified, and substantiated, a specific error committed by the state courts.  Moreover, he must show that the state committed the type of error that is actionable under § 2254(d), as that statute has been interpreted by the Supreme Court in *Williams*.

Federal habeas corpus review of a state criminal conviction is available only for claims involving federal constitutional issues.   A federal court is authorized to grant relief "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  *Harris v. Rivera*, 454 U.S. 339, 343 (1981).  The Supreme Court has repeatedly held that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  *See also Wainwright v. Goode*, 464 U.S. 78, 83 (1983) ("[i]t is axiomatic that federal

courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension").

## III.   ANALYSIS

Petitioner presents the following claims in this habeas action:  (1) he received ineffective assistance of counsel at trial and on direct appeal; (2) the trial court failed to obtain a proper waiver of his right to a jury trial on the aggravating sentencing factors; (3) the trial court improperly imposed a double upward durational departure based on judicial findings of aggravating factors; (4) the state court violated Petitioner's right to be free from double jeopardy because it sentenced Petitioner twice using the same set of facts.

### A.   Ground One:  Ineffective Assistance of Counsel.

Petitioner's Sixth Amendment ineffective assistance of trial and appellate counsel claims, as determined by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), were considered on the merits by the Minnesota Court of Appeals on the post-conviction appeal and rejected. Generally, Petitioner's argument to the Minnesota Court of Appeals was that "trial counsel was ineffective for not raising the issues concerning upward durational departures and aggravating factors pursuant to *Blakely v. Washington* and *State v. Shattuck*."  (Doc. No. 4-8 at 30 of 48.)  As best this Court can determine, this argument amounts to the charge that defense counsel was ineffective because the state was precluded under *Blakely* from seeking an upward durational

10

departure once Petitioner had pled guilty to the underlying offense.  In other words, the procedure followed by the trial court violated *Blakely* and counsel was deficient at trial and on appeal for allowing this to occur.  In reviewing this issue, the Minnesota Court of Appeals correctly applied the Supreme Court's decision in *Strickland* by requiring Petitioner to prove both that counsel's representation fell below an objective standard of reasonableness and that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Grady II*, at *4.  The court of appeals determined that the claim failed because Petitioner could not prove either prong of *Strickland*.  *Id.* at *5.

The court of appeals stated that Petitioner's trial counsel had in fact challenged the district court's authority post-*Blakely* to empanel a sentencing jury after a guilty plea is entered.  This is borne out by this Court's own review of the record.  Before trial, Petitioner's counsel submitted a memorandum of law where he argued that the state was precluded from "determin[ing] aggravating factors after Defendant pleads guilty to the Court."  (Doc. No. 4-2 at 2 of 21.)  He argued that once a defendant waives the jury trial and pleads guilty to the offense then the court is effectively precluded from finding aggravating factors to justify an upward durational departure because a jury is necessary to make any such findings, the defendant exercised his right to waive a jury, and the court must then limit itself to following the state's sentencing guideline procedures.

The Minnesota Court of Appeals disposed of this argument stating that trial counsel had in fact "challenged the district court's authority to empanel a sentencing jury after a guilty plea."  *Grady II*, 2009 WL 4573944, at *4. Ultimately, the challenge failed, but that was the result of the argument's lack of merit—not counsel's deficient performance.

> In fact, the argument is contrary to *Blakely* itself.  There, the defendant pleaded guilty, 542 U.S. at 298, 124 S.Ct. at 2534, but the Supreme Court held that the defendant was entitled to a jury determination of facts supporting an aggravated sentence, *id.* at 313, 124 S.Ct. at 2543, thus demonstrating that *Blakely* contemplates the procedure that Grady initially argued is impermissible.

*Id.* at *4.  After the state gave notice that it would seek the upward departure, Petitioner's trial counsel challenged the district court's authority to empanel a sentencing jury after a guilty plea was entered and preserved the issue for appeal.

The court of appeals also addressed the fact that on direct appeal Petitioner's counsel "recast the argument somewhat to focus on the validity of the aggravating factors."  *Id.* The court stated that Petitioner's counsel was "wise to do so" because, as noted above, *Blakely* contemplated the procedure utilized by trial court here:  that after the guilty plea there would be a determination made by the trier of fact of the facts supporting an aggravated sentence.  *Id.*  The trial judge properly made that determination based on the stipulated record.  By abandoning a losing argument and concentrating instead on arguments that had

greater potential for success on appeal, said the court of appeals, counsel's performance was not deficient. *Id.* Moreover, Petitioner could not prove that the result of the direct appeal would have been different had Petitioner's attorney reiterated the losing argument on appeal. *Id.* at *5. Thus, there was no showing of prejudice—the other prong of *Strickland.* As noted above, under AEDPA, this Court's habeas review of the state court decision is limited to deciding whether the state court's adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, federal law as determined by the U.S. Supreme Court, or involved an unreasonable determination of the facts. 28 U.S.C. § 2254(d); *Cullen v. Pinholster*, --- S.Ct. ----, No. 09-1088, 2011 WL 1225705, at *8-*9 (U.S. Apr. 4, 2011). Here, the Minnesota Court of Appeals did not render a decision that was contrary to or involved an unreasonable application of *Strickland.*

Petitioner's remaining arguments regarding the ineffective assistance of his counsel are equally meritless. While his arguments are difficult to follow, this Court understands them to be as follows. First, Petitioner appears to argue that his counsel was arguably deficient because he advised Petitioner to waive his right to a jury trial and to plead guilty without informing Petitioner about how this would affect the outcome of sentencing. It is unlikely that Petitioner fairly presented this particular *Strickland* issue to the state appellate court for review in his post-conviction proceeding. If so, his claim cannot be brought in habeas

because a state prisoner cannot raise any federal constitutional claim for the first time in a federal habeas corpus petition. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). But, as the Eighth Circuit noted in *Barrett v. Aceveto*, 169 F.3d 1155, 1162 (8th Cir. 1999), "judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." And so that is what this Court will do.

This Court's review of the record makes clear that after the state had notified Petitioner that it was going to seek the upward durational departure based on aggravating factors the court, his counsel, and the trial judge, made a detailed record of Petitioner's waiver of his right to a jury trial on the aggravated sentence issue. Petitioner, on the record, specifically acknowledged and agreed that he was giving up, or waiving, the following rights: the right to a jury determination of whether or not there were adequate facts proved, beyond a reasonable doubt, to demonstrate aggravating circumstances; the right to have the State's witnesses testify in his presence; the right to cross-examine the State's witnesses; the right to compel the testimony of favorable witnesses; and the right to personally testify. (Doc. No. 4-3, Hr'g Tr. dated October 13, 2005 at 10-12.) During this inquiry, Petitioner, under oath, stated he was making the decision to proceed in this manner freely, voluntarily, without any threats or coercion, and that this decision served his best interests under the circumstances. (*Id.* at 16-17.) The trial court then made the express findings

that Petitioner freely and voluntarily entered into a stipulated facts trial pursuant

to Minn. R. Crim. P. 26.01, Subd. 3 on the aggravating factors portion of the

case.  (*Id.* at 17-18.)  There is no merit to Petitioner's argument that he was not

fully informed of his right to a jury trial on the establishment of the aggravating

factors or the implication of the waiver of that right.  Given this record, Petitioner

cannot prove that his counsel's performance fell below *Strickland* standards and

so prejudiced the case that the outcome probably would have been different.

Second, Petitioner claims that his counsel was deficient because the trial

judge based his determination that the aggravating factors were proven beyond a

reasonable doubt on the basis of the stipulations entered into by the parties

pursuant to Minnesota Rules of Criminal Procedure 26.01 Subd. 3.[1]  But

---

[1]    Minn. R. Crim. P. 26.01, Subd. 3 provides, in relevant part:

   (a) The defendant and the prosecutor may agree that a determination of
   defendant's guilt, or the existence of facts to support an aggravated
   sentence, or both, may be submitted to and tried by the court based on
   stipulated facts. Before proceeding, the defendant must acknowledge and
   personally waive the rights to:

   (1) testify at trial;
   (2) have the prosecution witnesses testify in open court in the defendant's
       presence;
   (3) question those prosecution witnesses; and
   (4) require any favorable witnesses to testify for the defense in court.

(b) The agreement and the waiver must be in writing or be placed on the record.
(c) If the parties use this procedure to determine the issues of the defendant's
guilt, and the existence of facts to support an aggravated sentence, the
defendant must make a separate waiver of the above-listed rights as to each
issue.....

(Footnote Continued on Next Page)

Petitioner was fully informed at the October 13, 2005 hearing that this is exactly what would happen:  that the court would use the stipulated facts to make the determinations as to both guilt <u>and</u> aggravating sentencing factors.  (Doc. No. 4-3, Hr'g Tr. dated Oct. 13, 2005, at 10-15).  There was nothing to be gained by not entering into these fact stipulations because Petitioner never contested the stipulated facts (i.e., Petitioner's high blood alcohol concentration, the violation of his driver's license restrictions, the prior DWI convictions or his driving the wrong way on the divided highway).  Petitioner's counsel reserved the right to argue, and did argue, about whether these stipulated facts amounted to aggravating circumstances that justified an upward departure under Minnesota law. Counsel's argument on this score failed, but his efforts were not deficient. Moreover, there is no evidence that the outcome on Petitioner's sentence would have been any different had Petitioner's counsel demanded that a different procedure be employed to contest the determination of the aggravating factors or their impact on sentencing.

Finally, Petitioner argues that counsel was deficient because the sentencing court used various impermissible factors to support the upward departure.  For example, one of the aggravating factors was that Petitioner drove in violation of his restricted driver's license, but this conduct was the subject of a count for which Petitioner was convicted but not sentenced, and Petitioner

(Footnote Continued from Previous Page)

16

argues that it should not have been used as an aggravating factor.  However, the

Minnesota Court of Appeals thoroughly reviewed each of the aggravating factors

used by the trial court and found that they were proper.  There is nothing here to

establish that Petitioner's counsel's performance was deficient or that Petitioner

was prejudiced.  Accordingly, there was no violation of Petitioner's Sixth

Amendment right to assistance of counsel in his defense.

**B.     Grounds Two and Three:  No Valid Waiver of Jury Trial on Aggravating Factors**

As described above in the context of examining Petitioner's ineffective

assistance of counsel claim, this Court's review of the trial transcript establishes

that Petitioner made a knowing, intelligent, and voluntary waiver of his right to a

jury trial as to the existence of the aggravating factors offered by the state to

justify an upward durational departure.  This procedure was consistent with the

requirements of *Blakely*, 542 U.S. at 310 ("The State is free to seek judicial

sentencing enhancements so long as the defendant either stipulates to the

relevant facts or consents to judicial fact-finding" and "[e]ven a defendant who

stands trial may consent to judicial factfinding as to sentencing enhancements.")

Petitioner claims, however, that he never properly waived his right to a jury

trial on the aggravating factors.  He claims that he only stipulated at trial to the

elements of the offense for purposes of the court making the determination of

guilt, but did not waive his right to a jury trial on the aggravating factors.

The problem with this claim in federal habeas is that it was not presented

to the Minnesota courts on the direct appeal.  It was this failure that led the

Minnesota Court of Appeals to conclude that Petitioner could not raise this issue

in his state post-conviction proceeding.  *Grady II*, 2009 WL 4573944, at * 2.  As

in federal habeas post-conviction proceedings, the Minnesota courts in state

post-conviction proceedings consider any claim not raised in direct appeal to be

procedurally defaulted.  *Knaffla*, 243 N.W.2d at 741; *see also* Minn. Stat. §

590.01, Subd. 1(2) ("A petition for postconviction relief after a direct appeal has

been completed may not be based on grounds that could have been raised on

direct appeal of the conviction or sentence").

    As the Eighth Circuit explained in *Hall v. Delo*, 41 F.3d 1248, 1250 (8th

Cir. 1994), "[a] federal claim has not been fairly presented to the state courts,"

and is therefore procedurally defaulted, "when the state court has declined to

decide the federal claim on the merits because the petitioner violated a state

procedural rule."  *Id*.; *see also McCall*, 114 F.3d at 757 ("a federal court may

usually only consider those claims which the petitioner has presented to the state

courts in accordance with state procedural rules") (internal quotations and

citations omitted); *Satter v. Leapley*, 977 F.2d 1259, 1261 (8th Cir. 1992) (same).

    Thus, "a federal district court is precluded from substantively considering a

habeas corpus claim that a state court has disposed of on independent and

adequate non-federal grounds, including state procedural grounds."  *Clemons v.

Luebbers*, 381 F.3d 744, 750 (8th Cir. 2004).  This includes claims that the

Minnesota appellate courts have refused to consider on the merits based on the so-called *Knaffla* rule. *Carney v. Fabian*, 441 F.Supp.2d 1014, 1026-27 (D. Minn. 2006). In *Murray v. Hvass*, 269 F.3d 896, 899 (8th Cir. 2001), the Eighth Circuit stated that "it is not the province of a federal court to decide whether a matter ought to be considered procedurally defaulted under state law." *Id.* Specifically relating to the *Knaffla* procedural bar:

> [T]he general rule in Minnesota, as we have said, is that "where [a] direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief," *State v. Knaffla*, 309 Minn. 246, 243 N.W.2d 737, 741 (1976). This rule has been consistently followed by Minnesota courts for more than twenty years. [string citation omitted]

*Id.* at 899-900. *See also McCall*, 114 F.3d at 757-58 (holding offender defaulted on federal habeas claims because Minnesota state courts would not afford a hearing on the merits pursuant to *Knaffla*).

Where, as here, a claim has been procedurally defaulted in the state courts, it will not be entertained in a federal habeas corpus proceeding unless the petitioner has shown "cause and prejudice" to excuse his procedural default, or, in the alternative, that there would be a "fundamental miscarriage of justice" if the federal court declined to consider the claim. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also McCall*, 114 F.3d at 757 (citing *Abdullah*, 75 F.3d at 412-13) (stating that if state procedural rules prevent petitioner from obtaining a hearing on the merits, petitioner is also procedurally barred from obtaining

habeas relief in federal court unless she or he can demonstrate either cause and actual prejudice, or that a miscarriage of justice will occur if the merits of the petition are not reviewed).  To satisfy the "cause" requirement, a petitioner must demonstrate that some external impediment prevented him from presenting his claims to the state's highest court in a timely and procedurally proper manner. *Coleman*, 501 U.S. 753.  The prejudice, or "fundamental miscarriage of justice" exception is available only upon a "showing, based on *new evidence,* that a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Brownlow v. Groose*, 66 F.3d 997, 999 (8th Cir. 1995) (internal quotations omitted) (emphasis added).  In other words, a petitioner cannot simply point to errors that allegedly occurred during the course of his criminal prosecution; he must instead offer some new evidence that affirmatively demonstrates that he must truly be innocent of the crime for which he was convicted.  But a court need not consider the prejudice exception to a procedural default unless a petitioner establishes the cause component of the "cause and prejudice" requirement.  *Carney*, 441 F.Supp.2d at 1028-29.  This Petitioner cannot do.  Nothing prevented Petitioner from presenting to the state appellate courts his claim that the trial court failed to obtain a proper waiver of jury trial rights to aggravating factors in a stipulated facts trial in a timely and procedurally proper manner on direct appeal.

And there is nothing here to suggest, much less convincingly prove, that

there has been a fundamental miscarriage of justice because as described above, Petitioner made a knowing, intelligent voluntary waiver of his jury trial rights and, in light of the stipulated facts, this is not a case where there is any issue about an innocent person being convicted of a crime he did not commit.

### C.     Ground Four:  Violation of Double Jeopardy Clause.

Petitioner's double jeopardy-based arguments are equally unavailing.   He argues that "[t]he aggravating factors the District Court uses to base the double upward departure are from convictions either dismissed or vacated, elements of lesser include (sic) offenses that have been vacated or elements on conduct of crimes charges, proven guilty, convicted and sentenced."  (Doc. No. 3 at 19 of 21.)  As discussed above, the Minnesota Court of Appeals thoroughly reviewed the propriety of the trial court's use of each of the four aggravating factors to justify the upward durational departure and found that the sentencing court did not abuse its discretion in imposing a double-upward departure.  *Grady I*, 2007 WL 898597, at *3.  The court also addressed Petitioner's argument that the aggravating factors were not proper bases for departure because they either did not constitute separate offenses or constituted separate offenses of which he was not convicted, concluding that:

> Finally, Grady's remaining argument cannot succeed because a district court is permitted to consider, for sentencing purposes, a defendant's course of conduct in the commission of an offense. *Cox*, 343 N.W.2d at 643.  Furthermore, Grady waived his right to a jury trial on the aggravating factors, and the district court found that each factor was proved beyond a reasonable doubt.  *See* Minn. Sent. Guidelines II.D (permitting departure from presumptive

sentence if "substantial and compelling" circumstances are proved beyond reasonable doubt).

*Id.* at *6.

Petitioner now argues that the trial court's use of these allegedly improper aggravating factors as bases for the upward durational departure resulted in Petitioner being sentenced "twice using the same set of facts" in violation of the Double Jeopardy Clause of the Fifth Amendment of the U.S. Constitution.  (Doc. No. 1 at 5 of 6.)  This is the first time that Petitioner has raised a claim that the trial court's sentencing procedure violated the Double Jeopardy Clause.  This constitutional claim was not presented on either the direct appeal or the post-conviction motion and appeals.

A state prisoner cannot raise any federal constitutional claim for the first time in a federal habeas corpus petition.  A federal constitutional claim is reviewable in a federal habeas corpus proceeding only if that claim has already been fairly presented to, and decided on the merits by, the highest available state court.   *McCall*, 114 F.3d at 754; *Carney*, 487 F.3d at 1096 ("[i]n order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts").

This Court's review of Petitioner's direct appeal to the Minnesota Court of Appeals and his Petition to the Minnesota Supreme Court establishes that

Petitioner did not raise the double jeopardy claim at all.   It is a new claim and thus not cognizable in federal habeas.  *Turnage v. Fabian*, 606 F.3d 933, 936 (8th Cir. 2010).

Moreover, Minnesota state law prevents Petitioner from now raising this claim in state court.  *Smittie v. Lockhart*, 843 F.2d 295, 296 (8th Cir. 1988). Minnesota law provides that once Petitioner has directly appealed his sentence "all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief."  *Knaffla*, 243 N.W.2d at 741.  Petitioner's double jeopardy claim was not unknown, or so novel that its legal basis was unknown at the time of his direct appeal.  The claim was defaulted because Petitioner failed to pursue it on direct appeal.

Finally, Petitioner has not demonstrated cause for his default, actual prejudice, or that failure to consider the double jeopardy claim would result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 750; *Abdullah*, 75 F.3d at 411.  Petitioner gives no reason why he failed to raise a federal constitutional claim based on double jeopardy in his direct appeal.  And there is no fundamental miscarriage of justice because Petitioner has not demonstrated that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Brownlow*, 66 F.3d at 999 (internal quotations and citations omitted).

## RECOMMENDATION

Based on the above, and on the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.      The Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a

Person in State Custody (Doc. No. 1) be **DENIED**; and

2.      This case be **DISMISSED WITH PREJUDICE**.


Date:  April 7, 2011

                                        *s/ Jeffrey J. Keyes*
                                        JEFFREY J. KEYES
                                        United States Magistrate Judge


Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **April 21, 2011**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within **fourteen days** after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.